**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERWIN VASQUEZ CORREA, | Case No. 1:17-cv-00731-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

On May 25, 2017, Plaintiff Erwin Vasquez Correa ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) Plaintiff filed her opening brief on January 18, 2018, (Doc. 13), and Defendant filed her opposition on February 20, 2018, (Doc. 14). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)

# I. BACKGROUND

On July 31, 2012, Plaintiff protectively filed an application for DIB payments, alleging he became disabled on July 25, 2010, due to diabetes mellitus type 2, high cholesterol, high blood pressure, heart problems, dizziness and headaches, arthritis, shortness of breath, short memory, sleep apnea, and anxiety. (Administrative Record ("AR") 16, 65, 153–54, 173, 185, 213.) Plaintiff was born on April 3, 1962, and was 48 years old on the alleged onset date. (AR 22, 65, 76.) He completed the eleventh grade. (AR 37.) Plaintiff has past work experience as a shipping supervisor, a truck driver, and a forklift operator. (AR 21, 38, 176, 186, 195.)

## A. Relevant Medical Evidence[2]

### 1. Sierra View District Hospital

Plaintiff was admitted to the hospital in September 2007, complaining of shortness of breath and anterior chest burning. (AR 273, 284.) He presented with an episode of diaphoresis that lasted several minutes and was associated with lightheadedness and shortness of breath. (AR 273, 284.) He was observed to be in atrial fibrillation and a chest x-ray was performed, which indicated congestive heart failure. (AR 273, 278, 284.) An echocardiogram showed the following: normal LV size and mild left ventricular dysfunction; an approximate ejection fraction of 40%; left atrial enlargement; and mitral annular calcification. (AR 276–77.) Plaintiff was diagnosed with cardiac dysrhythmia–atrial defibrillation and flutter, chest pain (rule out myocardial infarction), and hyperglycemia. (AR 273.) He was provided medication and discharged. (AR 273.)

In November 2014, Plaintiff was referred to the hospital to conduct an imaging study for possible cardiomyopathy. (AR 353–54.) The study showed mild concentric left ventricular hypertrophy with normal ventricular systolic function, mild tricuspid regurgitation, and trace mitral regurgitation. (AR 353.)

### 2. Consultative Examiner Raman Verma, M.D.

On May 9, 2013, internist Dr. Verma reviewed Plaintiff's conducted an internal medicine

---

[2] As Plaintiff's assertion of error is limited to the ALJ's RFC assessment lacking substantial evidence, only evidence relevant to that argument is set forth below.

2

evaluation at the request of the Department of Social Services, Disability Determination Service. (AR 337–44.) Plaintiff complained of heart attack, diabetes, hypertension, back pain, and sleep apnea. (AR 338.) He reported that in 2009 he had a heart attack and underwent an angioplasty, after which he has not had any chest pain or shortness of breath. (AR 338.) Plaintiff claimed that he has suffered from short term memory loss since his heart attack. (AR 338.) Plaintiff takes medication for diabetes, which, according to Plaintiff, is "not under very good control." (AR 338.) He also takes medication for hypertension, which is "under good control." (AR 338.) Plaintiff was prescribed a CPAP machine for his sleep apnea, but stated he could not afford to get one. (AR 338.)

Dr. Verma observed Plaintiff was neat and clean in appearance and right-hand dominant. (AR 339.) Plaintiff's heart rate and rhythm were regular and no murmurs were heard. (AR 340.) Dr. Verma found no evidence of swelling, effusion, erythema, warmth, or deformity of the upper (shoulders, elbows, and wrists) and lower (hips, knees, and ankles) extremities. (AR 340.) All of Plaintiff's joint ranges of motion, both upper and lower extremities, were within normal limits. (AR 340.) Plaintiff had no complaint of tenderness to palpation throughout the neck or in the trapezial or interscapular areas, and there was no evidence of increased muscle tone or muscle spasm. (AR 340.) Dr. Verma found the range of motion in Plaintiff's cervical spine demonstrated "no discernable limitation in any plane, including flexion, extension, rotation, and lateral flexion." (AR 340.) Plaintiff's lumbar spine showed no evidence of increased muscle tone, muscle spasm, significant kyphosis, lordosis, or noticeable scoliosis. (AR 340.) His range of motion was found by Dr. Verma to demonstrate "no discernable limitation in any plane." (AR 340–41.) Plaintiff's straight leg raising test both sitting and supine was negative, bilaterally. (AR 341.)

Dr. Verma further observed Plaintiff was able to "manipulate the use of a pen with ease," "approximate fingers and make a fist without difficulties bilaterally," and achieve "pinch positioning" adequately bilaterally. (AR 341.) His motor examination revealed normal muscle tone and bulk with essentially normal strength ("5/5") in "all major muscle groups of the upper and lower extremities." (AR 341.) Dr. Verma found Plaintiff's grip strength was "commensurate

with motor strength" and the effort was "adequate." (AR 341.) Plaintiff's sensory examination was "[g]rossly intact to light touch and monofilament testing in the upper and lower extremities." (AR 342.)

Dr. Verma concluded Plaintiff's coronary artery disease, which is stable, would limit Plaintiff's activities, whereas Plaintiff's history of diabetes and hypertension would not. (AR 342.) He assessed Plaintiff's physical residual functional capacity ("RFC")[3] and opined that Plaintiff was limited to: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking (with normal breaks) up to six hours in an eight-hour workday; and climbing, balancing, stooping, kneeling, crouching, and crawling frequently. (AR 343.) Dr. Verma found no limitations on sitting, pushing and/or pulling, reaching, feeling, manipulative activities (both gross and fine), seeing, hearing, and speaking, and further found no environmental limitations. (AR 342–43.)

### 3. State Agency Consultants

On May 28, 2013, Wyatt S. Beazley, III, a Disability Determinations Service administrator[4], prepared a physical RFC assessment and determined that Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit (with normal breaks) about six hours in an eight-hour workday; climb ladders, ropes, and scaffolds and crawl occasionally; climb ramps and stairs, balance, stoop, kneel, and crouch frequently. (AR 71–72.) SDM Beazley also stated Plaintiff should avoid concentrated exposure to hazards (machinery, heights, etc.), but noted no other limitations. (AR 71–72.)

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[4] Mr. Beazley is a disability claim manager titled a "single decision maker" ("SDM"). A SDM is not a licensed physician or psychologist. The use of such SDMs in evaluating medical evidence is part of the agency's testing modifications of the disability claim process. *See* 20 CFR § 404.906(b)(1). Since a SDM is not a medical professional, his opinion is not considered acceptable medical evidence according to agency definitions. *See* 20 CFR §§404.1502, 404.1513(a).

4

Upon reconsideration on November 15, 2013, a Disability Determinations Service medical consultant, W. Jackson, M.D., entered an opinion affirming the assessment of SDM Beazley. (AR 83–85.)

### 4. Kern County Neurological Medical Group, Inc.

In May 2015, Plaintiff presented to the Kern County Neurological Medical Group complaining of numbness and pain in both of his upper extremities. (AR 433.) He reported that he had "severe numbness starting in his finger tips up to his elbow and up to the shoulder" and "difficulty in spreading his fingers and stretching." (AR 433.) Plaintiff related how he needed assistance writing and was dropping things like a coffee cup. (AR 433.) He is right-handed and reported that his right hand was worse than his left. (AR 433.) Plaintiff also complained that he experienced symptoms in his legs, mostly in his right leg. (AR 433.)

Upon examination by Jian C. Lin, M.D., Plaintiff was observed to be well-developed and well-nourished. (AR 434). Plaintiff's heart was regular in rate and rhythm. (AR 434.) Dr. Lin observed no rash or edema in the extremities. (AR 434). His neurological examination found Plaintiff to be alert, awake, and oriented to time, place, and person. (AR 434.) The motor examination showed normal tone and muscle strength of 5/5 in both upper and lower extremities. (AR 434.) Deep tendon reflexes were symmetrical on both upper and lower extremities and the sensory examination was intact to light touch and pinprick. (AR 434.) Plaintiff's coordination was intact, his Romberg was negative, and his gait was normal. (AR 434.) Dr. Lin assessed "[p]ain in [l]imb" and "[d]isturbance of [s]kin [s]ensation," both of which were indicated as "stable." (AR 434.) He scheduled an EMG/NCV test and asked Plaintiff to follow-up in six weeks. (AR 434.)

X-rays of Plaintiff's cervical spine taken June 9, 2015, showed no cervical spine fracture or acute changes, moderate C5-C7 degenerative disc disease, mild C5-C7 spondylosis changes, and a grade 2 C7-T1 anterior listhesis. (AR 432.) On June 22, 2015, Plaintiff presented to Dr. Lin complaining of a "worsening numbness and pain" in his upper extremities since his last visit. (AR 429.) Plaintiff also complained of numbness and pain in his right leg and low back. (AR 429.) His motor examination showed normal tone and muscle bulk, strength (5/5), and deep

5

tendon reflexes in both upper and lower extremities. (AR 430.) Plaintiff's sensory examination was intact and his gait normal. (AR 430.) Dr. Lin noted that the results of an EMG nerve conduction study showed "[c]arpal tunnel syndrome with moderate severity bilaterally." Dr. Lin assessed Plaintiff with carpal tunnel syndrome, disturbance of skin sensation, and cervical spondylosis without myelopathy.[5] (AR 430.) Dr. Lin started Plaintiff on Neurontin and recommended the use of wrist splints. (AR 431).

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 29, 2013, and again on reconsideration on November 18, 2013. (AR 89–93, 97–98.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 99–104.) At the hearing on May 21, 2015, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 34–58.)

    **1.     Plaintiff's Testimony**

Upon administration of the oath, Plaintiff had difficulty raising his right hand and straightening his fingers. (AR 34–35.) He testified that he cannot work due to the side effects of his heart medication causing headaches and nausea. (AR 39, 42.) He has spoken with his doctor about his medication side effects, but the different medications that have been tried have made the symptoms worse. (AR 40.) He drops his coffee and cannot hold a cup, and that it is difficult for him to stand and get up out of a chair. (AR 39.) He reported having numbness in his hands and that his fingertips and feet are "real cold." (AR 41.) His symptoms have gotten worse to the point where he cannot use his right arm or straighten out his fingers; he also experiences these symptoms in his right leg, causing his right knee to swell and "sharp pains all through [his] right side." (AR 41.) He has numbness in his feet and an "ongoing pain all the time . . . up in [his] neck or [his] shoulders going down to [his] legs," and he uses a walker that he obtained on his own. (AR 42.) He also gets "sharp abdomen pains" and that it is difficult for him to "get around

---

[5] Cervical spondylosis refers to a degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connective tissue, sometimes with pain or paresthesia radiating along the upper limbs as a result of pressure on the nerve roots. *See* Dorland's Illustrated Medical Dictionary 1780 (31st ed.2007). Myelopathy in this context refers to any of various functional disturbances or pathological changes in the cervical spinal cord, a complication that occasionally arises from rheumatoid arthritis or osteoarthritis. *See id*. at 1239.

6

and do normal things," like putting on his shoes. (AR 39.) He also has pain in his back. (AR 52.)

Plaintiff stated he could sit comfortably for about thirty minutes before he has to stand, and can stand about 30 minutes before needing to sit. (AR 44.) He cannot even walk half of a block and has trouble reaching with his right arm but no trouble with his left arm—although he experiences numbness in his fingers on his left hand. (AR 45.) It is "almost impossible" for him to bend over due to pain radiating from his right shoulder to his knee. (AR 46.) He cannot climb stairs and cold weather makes his pain worse. (AR 46.) He can do "almost nothing" with his right hand, and has to rest a "[c]ouple times day" for five to fifteen minutes. (AR 53, 56.) He can lift about ten pounds with both arms and with his left hand. (AR 57.)

Plaintiff lives in a one-story home with his wife. (AR 36.) He has a driver's license but drives "very little" because he has a hard time using his hands to turn the steering wheel. (AR 37.) Plaintiff does not use public transportation; instead, family members drive him places. (AR 37.) According to Plaintiff, in a typical day he will get up get up and watch television, then walk to the mailbox to check the mail. (AR 47.) Plaintiff is learning to use his left hand to shave, and can shower on his own. (AR 47.) He has difficulty dressing because of his right arm and back, does not do any housework, and needs help with yardwork on which he spends "a couple hours" a week. (AR 47–49.) He makes sandwiches or hot dogs for meals and will visit his brother for dinner. (AR 50.) He uses medical marijuana for pain. (AR 54.)

Plaintiff stopped working in 2010 because his "job performance was really getting bad." He "started forgetting numbers" and had to go to the bathroom all of the time due to his medications. (AR 38.) He was eventually let go from his position because the facility closed down. (AR 38.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a truck driver, Dictionary of Operational Titles (DOT) code 906.683-022, which was medium exertional

work, with a specific vocational preparation (SVP)[6] of 3; as an industrial truck operator, DOT code 921.683-022, medium and SVP of 3; and as a shipping supervisor, DOT code 550.137-018, light, SVP of 7, performed at the medium exertional level. (AR 59.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background. (AR 59–60.) The VE was also to assume this person is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting, standing and/or walking for six to eight hours in an eight-hour workday, and limited to crawling and climbing ladders and scaffolds occasionally, and all other postural activities performed frequently. (AR 59–60.) The VE testified that such a person could not perform Plaintiff's past relevant work, but would be able to perform other work in the national economy, such as assembler, DOT code 712.687-010, light, SVP 2; a sorter, DOT code 222.687-082, light, SVP 2; and a packer, DOT code 920.687-082, light, SVP 2. (AR 60.)

The ALJ asked a follow up question regarding a second hypothetical worker who had the same limitations as set forth in the first hypothetical, except that the individual was limited to occasional reaching with the right upper extremity, never climbing ladders or scaffolds or crawling, should never be exposed to unprotected heights, moving mechanical parts, extreme cold, and should never be required to drive a mechanical vehicle. (AR 60.) The VE testified that there would be no work that such individual could perform. (AR 60–61.) The ALJ posed a third hypothetical based on the second hypothetical, except that the worker was limited to frequent reaching with the right upper extremity. (AR 61.) The VE testified that such an individual could not perform Plaintiff's past work, but could perform the jobs identified in response to the first hypothetical. (AR 61.) The ALJ posed yet another, fourth hypothetical based on the third, which required that the worker have a sit/stand option wherein they can alternate between sitting and standing, but no more often than every 30 minutes. (AR 61.) The VE testified that such an individual could not perform Plaintiff's past work, but could perform the jobs identified in response to the first hypothetical. (AR 61.) The fifth hypothetical posed to the VE was based on

---

[6] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

8

the fourth hypothetical, with the additional limitation that, in addition to normal breaks, the individual would be off task for 20 percent of the time. The VE testified that that there would be no work that such individual could perform. (AR 62.)

Plaintiff's attorney then inquired of the VE whether an individual, who was based on hypothetical three, and was limited to fine and gross handling occasionally could perform Plaintiff's past work or any work in the national economy. (AR 62.) The VE testified that in that sixth hypothetical there would be no work that such individual could perform, and it would make no difference if the gross handling was occasional and the fine handling was frequent, and vice versa. (AR 62.) The ALJ interjected an seventh hypothetical, where the limitation would be frequently for fine and gross manipulations bilaterally, and the VE testified that the individual could perform the other work previously identified. (AR 62–63.) Finally, Plaintiff's attorney posed an eighth hypothetical, which included in any of the preceding hypotheticals that the individual would need to take two additional unscheduled work breaks lasting from five to 15 minutes. (AR 63.) The VE testified that that there would be no work that such individual could perform. (AR 63.)

**C.    The ALJ's Decision**

In a decision dated September 21, 2015, the ALJ found that Plaintiff was not disabled. (AR 16–23.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 18–23.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 25, 2010, the alleged onset date. (AR 18.) The ALJ found that Plaintiff had the severe impairments of ischemic heart disease, diabetes mellitus, hypertension, degenerative disc disease and osteoarthritis of cervical spine, and carpal tunnel syndrome. (AR 18.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 18.) The ALJ determined that Plaintiff had the RFC

> to perform a range of light work as defined in 20 CFR [§] 404.1567(b). Specifically, [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight hour workday; stand/walk for six hours out of an eight hour workday; frequently climb ramps and stairs; frequently perform all other postural activities (except

9

    for those from which [Plaintiff] is precluded); frequently reach with the
    right upper extremity; and frequently perform fine/gross manipulation,
    bilaterally. [Plaintiff] is precluded from climbing stairs and scaffolds;
    crawling; unprotected heights; moving mechanical parts; driving vehicles;
    and exposure to extreme cold.

(AR 19.)

The ALJ found that, given his RFC, Plaintiff was unable to perform any past relevant work, but that Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies, specifically sorter and packer. (AR 21–22.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were "less than fully credible." (AR 21. *See also* AR 20.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 22, 2017. (AR 3–9.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## II.     LEGAL STANDARD

### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this

10

determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund*

11

*v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### III.     DISCUSSION

Plaintiff contends that there is no substantial evidence to support the ALJ's RFC assessment limiting Plaintiff to light work with frequent reaching with his right upper extremity. (Doc. 13 at 7–9.) He points out that, as of May 2014, there are "no medical source statements from a state agency physician, medical expert at the hearing, consultative examiner, or treating

physician," nor are there any "assessments from other medical sources such as a physician's assistant, nurse practitioner, chiropractor, and so forth." (*Id.* at 7–8.) Plaintiff submits that the ALJ "could have adduced testimony from a medical expert at the hearing," "could have ordered an updated consultative psychiatric/psychological examination," and "could have sought clarification from the treating physician," but instead "essentially assess[ed] a limitation to light work with frequent use of the right arm" based on his analysis of the objective medical evidence for which he was not qualified. (*Id.* at 9–10.) Plaintiff contends that because substantial evidence does not support the ALJ's RFC determination, the matter should be remanded for further administrative proceedings for reconsideration of Plaintiff's RFC, particularly from approximately May 2014. (*Id.* at 10.)

Defendant responds that the ALJ's RFC determination took into consideration Plaintiff's more recent treatment records from Dr. Lin and found that they showed Plaintiff was slightly more limited that assessed by Drs. Verma and Jackson. (Doc. 14 at 7–8.) Defendant also relies on the fact that Plaintiff's subjective complaints were found to be less than credible, a finding that Plaintiff does not challenge. (*Id.* at 8.) Defendant maintains that the ALJ's RFC was therefore based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (*Id.* at 9.)

**A.     Legal Standard**

An individual's RFC is his or her ability to do sustained work activities despite limitations from any impairments. 42 U.S.C. § 404.1545(a). The RFC assessment considers any symptoms related to a claimant's impairment(s), such as pain, that may limit what the claimant can do in a work setting. *Id.* The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms,

13

including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883. The ALJ is required to consider any medically determinable impairment including severe and nonsevere conditions in developing Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(2); SSR 96–8.

## B. Substantial Evidence Supports the ALJ's RFC Determination.

In formulating Plaintiff's RFC, the ALJ explained that "[she] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR 19.) The ALJ discussed the May 9, 2013, opinion of the consultative examiner Dr. Verma, who opined that Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking (with normal breaks) up to six hours in an eight-hour workday, and climbing, balancing, stooping, kneeling, crouching, and crawling frequently, with no other limitations. (AR 20–21, 342–43.) Dr. Verma's opinion was supported by state agency consultant Dr. Jackson's November 15, 2013, opinion with regard to Plaintiff's exertional limitations. (AR 83–85.) Dr. Jackson affirmed the review of SDM Beazley, who found Plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking about six hours in an eight-hour workday, sitting (with normal breaks) about six hours in an eight-hour workday, climbing ladders, ropes, and scaffolds and crawling occasionally, climbing ramps and stairs, balancing, stooping, kneeling, and crouching frequently, and avoiding concentrated exposure to hazards (machinery, heights, etc.).[7] (AR 71–72, AR 83–85.)

---

[7] In his Opening Brief, Plaintiff correctly notes that SDM Beazley "is not a medical source, and must not be accorded any weight," (Doc. 13 at 5 n.1). *See Morgan v. Colvin*, 531 F. App'x 793, 794–95 (9th Cir. 2013) ("An ALJ may not accord any weight, let alone substantial weight, to the opinion of a non-physician SDM.") (citing Program Operations Manual System DI 24510.050). *See also* 20 CFR §§404.1502, 404.1513(a). While the ALJ did not expressly discuss SDM Beazley's opinion in her decision, she did give "some weight" to the "State agency medical consultants," which presumably included SDM Beazley. (*See* AR 21.) To the extent that Plaintiff assigns error to the ALJ's assignment of weight to SDM Beazley's RFC assessment, such error is insufficient to require remand in this case, as the assessment was affirmed in its entirety by agency physician Dr. Jackson. (*See* AR 83–85.) Specifically, Dr. Jackson indicated that "[t]he evidence has been reviewed. I agree with the initial assessment and recommend affirmation as written for a Light RFC." (AR 85.) The ALJ was obligated to consider Dr. Jackson's opinion as part of her evaluation of the medical opinion evidence. *See* 20 C.F.R. § 404.1527(f)(2)(i). Thus, the ALJ's error in giving weight to SDM Beazley's RFC review is harmless. *See, e.g., Foster v. Colvin*, No. CV–11–5119–FVS, 2013 WL 5530528, at *5 (E.D. Wash. Oct. 7, 2013) (holding that although the ALJ "referred to [SDM] Ms. Bullard's report directly" in her decision, any error by referring to the report was harmless, "[g]iven that Dr. Platter affirmed Ms. Bullard's report without alteration.").

14

The ALJ gave only "some weight" to Dr. Verma and to the state agency consultants, explaining that they "did not have the benefit of a fully developed record." The ALJ instead assessed "more restrictive postural, manipulative, and environmental limitations" than those opinions imposed, based on Plaintiff's testimony and "recent records, which showed carpal tunnel syndrome and degenerative disc disease in the cervical spine." (AR 21.) The ALJ noted the results of a June 2015 EMG nerve conduction study showed "[c]arpal tunnel syndrome with moderate severity bilaterally." (AR 21, 430.) X-rays of Plaintiff's cervical spine, also performed in June 2015, showed no cervical spine fracture or acute changes, moderate C5-C7 degenerative disc disease, mild C5-C7 spondylosis changes, and a grade 2 C7-T1 anterior listhesis. (AR 21, 432.) Based on this objective testing, treating physician Dr. Lin assessed Plaintiff with carpal tunnel syndrome, disturbance of skin sensation, and cervical spondylosis without myelopathy. (AR 430.) Dr. Lin's examinations of Plaintiff in May and June 2015 were otherwise normal, showing normal tone and muscle bulk, strength of 5/5 in both upper and lower extremities, symmetrical deep tendon reflexes on both upper and lower extremities, intact sensory examination, and normal gait. (AR 21, 430, 434.)

The ALJ's RFC assessment is also based on consideration of Plaintiff's statements concerning the "intensity, persistence and limiting effects of [his] symptoms," which the ALJ discussed at length. (AR 19–20.) The ALJ found these statements were "not credible to the extent they are inconsistent with the above residual functional capacity."[8] (AR 20.) Plaintiff testified, consistent with the ALJ's RFC assessment of frequent reaching with the right upper extremity, he has trouble reaching with his right arm but no trouble with his left arm. (AR 20, 45.) He testified he can lift about ten pounds with both arms and with his left hand (and possibly more), lending further support to the limitations opined by Drs. Verma and Jackson. (AR 20, 57.)

//

---

[8] The ALJ discounted Plaintiff's credibility in this case, finding that his ability to participate in his reported activities of daily living "undermined the credibility of [Plaintiff's] allegations of disabling functional limitations." (AR 20.) Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

Plaintiff contends that the ALJ impermissibly interpreted the June 2015 EMG and x-ray "raw medical data in functional terms" and suggests she should have instead taken other "measures" to develop the record, such as adduce testimony from a medical expert, order an updated consultative examination, or seek clarification from the treating physician.[9] (Doc. 13 at 9–10.) The record, however, belies Plaintiff's position. It is well-settled that an ALJ may not substitute her own medical judgment for that of a physician. *See Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). That, however, was not the case here.

In concluding that the June 2015 EMG and x-ray evidence supported "more restrictive postural, manipulative, and environmental limitations" than those assessed by Dr. Verma and by the state agency consultants (AR 21), the ALJ accurately recounted, nearly verbatim, the impressions of Mark Williams, M.D., who reviewed the x-ray results (AR 432) and of Dr. Lin, who reviewed the EMG study (AR 430.) (*See* AR 28.) The ALJ's discussion of these diagnostic testing results is consistent with the record and not a product of her lay opinion. *See Saheed v. Colvin*, No. 1:15-CV-00848-SMS, 2016 WL 6522742, at *5–6 (E.D. Cal. Nov. 3, 2016). Moreover, an ALJ's duty to develop the record further is triggered only when the record contains ambiguous evidence or is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). Here, the EMG and x-ray records were not ambiguous and the record was not inadequate. Dr. Lin assessed Plaintiff with carpal tunnel syndrome and cervical spondylosis without myelopathy (AR 430), which was what the EMG and x-ray results showed (AR 430,

---

[9] Plaintiff notes in his Opening Brief that if was found to be limited to occasional reaching and/or handling with the right upper extremity, he could not perform any work. (Doc. 13 at 8 (citing AR 60–62).) He similarly contends that if he was found to be limited to sedentary work, a finding of disability would have resulted "under grid rule 201.10.3." (*See id.* at 9 (citing 20 C.F.R., Part 404, Subpart P, Appendix 2 § 201.10).)

16

432). *See Pound v. Astrue,* No. EDCV 11–2039–JPR, 2012 WL 4513638, at *8 (C.D. Cal. Oct. 2, 2012).

The record does not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or even has limitations greater than those determined in the ALJ's decision. None of Plaintiff's treating doctors recommended restrictions on Plaintiff's ability to work. While Plaintiff obviously disagrees with the ALJ's assessment of the June 2015 EMG and x-ray studies, he fails to articulate exactly what evidence—other than his less-than-fully-credible statements—supports his belief that those studies show greater limitations than those found by the ALJ.

Considering the record as a whole, including evidence from before and after May 2014 and inferences reasonably drawn therefrom, the Court finds that the ALJ's RFC assessment is supported by substantial evidence, both in terms of objective medical evidence as well as opinion evidence regarding Plaintiff's functioning. As such, the ALJ's decision is legally sufficient and will be affirmed. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citing *Tommasetti*, 533 F.3d at 1038).

### IV. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**May 16, 2018**__     /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

17